# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILBURT REESE, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-8336** |
| **GREAT WEST CASUALTY COMPANY, ET AL** | **SECTION: "L" (4)** |

## ORDER

Before the Court is **Motion for Contempt, Sanctions and Cost, and to Compel (Rec. doc. 68) and an Emergency Motion for Protective Order (R. Doc. 85)** The motions are opposed (Rec. doc. 70, 94). The matters were set with oral argument on July 24, 2019 (Rec. doc. 69) and on September 4, 2019 (Rec. doc.96), respectively.

### I.  Background

The claimants initiated this lawsuit as a result of a collision allegedly occurred with a driver of an eighteen-wheeler who was attempting to make a lane change. As a result, the claimants seek damages.

### II.  The Motion

The discovery in this case made a shift to the defendants subpoenaing records and noticing the deposition of the plaintiff's treating physician Dr. Lonseth. According to the pleadings, on May 21, 2019 the defendants issued a subpoena for the deposition of the Office/Billing Administrator for Dr. Eric Lonseth and sought her appearance at 11:00am so as not to inconvenience the Office/Billing Administrator at Lonseth Interventional Pain Center, 4213 Teuton Dr. in Metairie. Service of the notice was made on the receptionist, Tyra Bandi. Rec. doc. 68-1.

The notice at issue sought the production of the following: (1) referral of Reese to Dr. Lonseth; (2) billing in connection with Reese medical treatment; (3) records of examination and treatment; (4) price setting for treatment of Reese and other patients; (5) evidence of payment terms including collection at close of the lawsuit; and (6) information regarding payments received for or from Reese. Rec. doc. 68. In addition to the above, the notice also sought the production of prior deposition testimony of Dr. Lonseth, copies of the transcripts, list of his employees, copies of contracts Lonseth had on his own behalf or Lonseth Interventional Pain Center ("Pain Center") with Total Medical Concepts and or MedPort or any other medical funding company. It also sought the sources of funding of the Pain Center.

Darren Harper, the process server served an employee of the pain Center on June 3, 2019. Rec. doc. 68-3, Exhibit 2. According to the affidavit, paralegal Stagg later spoke with a representative in Dr. Lonseth's call center who advised that she would try to contact the office and when she did so and reported that the office was closed that day. Rec. doc. 68-5.

Believing that they properly noticed the deposition, counsel for the defendant conducted a *process verbal* noting their efforts to notice the deposition for June 13, 2019 and the events that occurred when they showed up for the deposition only to find a closed office. Rec. doc.68

Thereafter, the defendants filed the subject motion on July 3, 2019 seeking to compel the attendance of the office administrator at a deposition and for her to produce records from Dr. Lonseth's office regarding: (1) referral of Reese to Dr. Lonseth; (2) billing in connection with Reese medical treatment; (3) records of examination and treatment; (4) price setting for treatment of Reese and other patients; (5) evidence of payment terms including collection at close of the lawsuit; and (6) information regarding payments received for or from Reese. Rec. doc. 68. In addition to the above, the notice also sought the production of prior deposition testimony of Dr. Lonseth for 24 months, copies of the transcripts, list of his employees, copies of contracts Lonseth

2

had on his own behalf or Lonseth Interventional Pain Center with Total Medical Concepts and or MedPort or any other medical funding company. It also sought the sources of funding of the Pain Center. Medport is a factoring company that purchases account receivables secured by medical liens.

Almost two weeks after the deposition date passed, counsel for Dr. Lonseth by letter dated June 24, 2019 acknowledged receipt of the notice and (1) produced billing records for Rees and Odds, (2) objected to the contents of the notice that go beyond the physician's treating records because the requests were neither relevant nor proportional, (3) objected to all other non-patient related information as not proportional to the needs of the case and (4) objected to the production of contracts because they were privileged and confidential and trade secret business information. Rec. doc. 70-1. On July 24, 2019 counsel for Dr. Lonseth communicated by letter with the defendant's attorney advising that August 19, 2019 appeared to be the best day to reset the deposition.

The Court also heard oral argument on the motion on July 24, 2019. During the hearing counsel for the defendants and counsel for Dr. Lonseth agreed to working toward a compromise solution. Rec. doc. 75. The parties agreed to narrow the request to Dr. Lonseth seeking documents for patients treated who had the same CPT code as Reese and Odds from December 2017; May through June 2018; and December 2018 through January 2019. Counsel further agreed to eliminate the words "records, report and documents" from the notice. Rec. doc. 75. The Court partially denied the motion to compel as a result of the oral agreement reached and rescheduled the hearing to address the remaining issues; (1) the existence of a filing system that identified patients by whether they are in litigation or no; and (2) once the number of in litigation patients is determined, then an assessment of how many of those patients use factoring companies and

production required to permit comparison of pricing. The Court considered the dispute ongoing and unsettled.

Trying to gain knowledge about the filing system for Dr. Lonseth, the Court ordered Dr. Lonseth to produce to the Court the count or number of patients, In-Litigation Patients and those not in litigation for *in camera* review on August 9, 2019. Rec. doc. 75. The Court also set a telephone status conference for August 12, 2019

Dr. Lonseth exceeded the request of the court. Rather than providing the numerical count, he incurred additional expenses and provided actual documents for 165 patients for *in camera* review and sought reimbursement for the $3000 expense it incurred in compiling the information.

Thereafter, on August 12, 2019, a follow up hearing by telephone took place and the Court conducted a review of several documents provided by Dr. Lonseth. Counsel also confirmed that Dr. Lonseth does not categorize or flag his electronic medical records system by litigation or non-litigation patients so the process of segregating them is tedious. The Court, therefore concluded that because the information was not maintained in the regular course of business by the defendant the request was not proportional to the needs of the case and therefore denied. The Court further denied the request for the rates charged for litigation and non-litigation patients as there was no apparent difference as observed upon its review of the *in camera* documents. Rec. doc. 97.

Also, during the conference the Court ordered the defendants to file a brief by August 16, 2019 providing authority for why the following information is discoverable from a non-party:

(1) information related to payments received by Dr. Lonseth from Medport LA, LLC for assignment of the accounts receivables is related to the treatment of Reese and Odds ( topics 1( e), 6 and 29);

(2) a list of Dr. Lonseth's employees for 2 years (Topic 3)

(3) Dr. Lonseth's account records reflecting amouns that he received over the last 2-5 years for other patients who received care and treatment similar to Plaintiffs (Topic Nos. 23-28).

4

The defendants wholesale ignored the Court's order. Rather than providing explanations for items (1), (2) and (3), they re-raised argument on an area previously ruled on and reargued that everyone apparently is not billed the same. Rec. doc. 78.

However, upon looking at the issue, the purported agreement did not result in a meeting of the minds as believed by the defendant, the purported agreement was drafted by the defense counsel and nor was it signed by counsel for Dr. Lonseth. Id. The defendants pointed out that in the meantime it subpoenaed Blue Cross Blue Shield ("BCBS") requesting copies of charge masters of provider payment registers for charges paid to Dr. Lonseth and his business from September 5, 2017 through June 1, 2019. Rec. doc. 78. BCBS responded to the subpoena and contends that the CPT codes and total charges contained material, substantive discrepancies between the sum billed to patients undergoing the same procedure. Id. The defendants complain that he charged less to BCBS rather than the rates reflected on the fee schedule. The defendant then conflated the issue by suggesting that it suspected that cases involving a factoring company resulted in charge increases so the physician can obtain a regular fee before resolving the case; note-BCBS is not a factoring company.

Dr. Lonseth opposed the motion noting that (1) the defendants failed to clear the date of the deposition with Dr. Lonseth's staff and (2) Dr. Lonseth's office was closed on the day of the deposition because he was out of town and had his calendar been checked his office would have advised that it would not be open that day. Additionally, Dr. Lonseth contends that no coordination of the deposition took place with his office and when the notice was received it was forwarded to MedSouth, who has an agreement with Dr. Lonseth to manage all Federal and State Court Subpoenas. Rec. doc. 70.

Upon recognizing the perceived error with the notice of deposition, Dr. Lonseth's objected to the scope of the notice and its service and so advised defendant's counsel in writing. On July 18, 2019, less than 8 days before the hearing on this matter, Dr. Lonseth's office was served with the subject Motion for Contempt and immediately contacted the defendant's attorney's office to discuss the matter to provide alternative dates to the deposition. Dr. Lonseth contends that the defendant's attorney continues to compound its errors regarding both the scheduling of the deposition and service of the notice as they were both served too late to be effective. Nonetheless, Dr. Lonseth despite the defects in the service of the notice and the over breath nature of the topics, contends that he made himself available and reset the deposition to August 19, 2019.

On August 19, 2019, Dr. Lonseth responded to the supplemental memorandum in support by pointing out that the defendants wholesale and wrongly allege that he overcharges his In-Litigation Patients when they compared to the BCBS Physician Payments Report. Lonseth contends that the defendants have improperly gained access to nearly 2 years of protected health information related to the care and treatment of his patients whose charges were submitted to BCBS without securing approval from the patients in violation of Louisiana Revised Statute Sec. 13:3715.1. Rec. doc. 81. Dr. Lonseth therefore seeks a denial of the motion to compel and the notice of deposition directed to him.

### III. Standard of Review

Federal Rule of Civil Procedure 45(d)(3) governs the quashing or modifying of subpoenas. The Court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv). The Court may also modify or quash a subpoena that requires the disclosure of a trade secret or an unretained expert's

opinion that does not describe specific occurrences in dispute and results from that expert's study that was not requested by a party. Fed. R. Civ. P. 45(d)(3)(B).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Id. In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. Id. at 26(b)(2)(C)(iii).

### IV.   Analysis

#### A.   Adequacy of Service of the Notice and Subpoena

The defendants contend that they: (1) properly noticed the deposition of Dr. Lonseth's Office Administrator; (2) showed up for the deposition as scheduled; and (3) found the doors locked. The defendants further seek an order of contempt against Dr. Lonseth and/or the Office Administrator

Dr. Lonseth contends that he was not properly served with the subpoena, and the scope of the notice of deposition was overly broad, irrelevant and not proportional warranting denial of the motion.

It is settled law in Louisiana that a corporation must be served by personal service on its agent for service of process. However, there are procedural provisions which will allow service on a party other than the appointed agent. Louisiana Code of Civil Procedure Article 1262 reads as follows:

> "If the officer making service certifies that he is unable, after diligent effort, to have service made as provided in Article 1261, then the service may be made personally on the secretary of state, or on a person in his office designated to receive service of process on corporations. The secretary of state shall forward this citation to the corporation at its last known address."

In this case, the defendants made service on the receptionist for Dr. Lonseth's Pain Center. There is no evidence that the receptionist is the registered agent for his office. To the contrary, the evidence shows Dr. Lonseth is the registered agent for his professional medical corporation. Rec. 101-3. The officer who effectuated service did not indicate that he was unable to serve Dr. Lonseth after a diligent effort had been made such that serving on the reception in his office, even if she is designated to receive service of process is improper. Therefore, the Motion to Compel is Denied insufficiency of service.

Even if service of the subpoena and notice is later perfected, it contains problematic topics. More particularly, the notice seeks the testimony and documents on the following:

(1) information related to payments received by Dr. Lonseth from Medport LA, LLC for assignment of the accounts receivables is related to the treatment of Reese and Odds (topics 1(e), 6 and 29);

(2) a list of Dr. Lonseth's employees for 2 years (Topic 3)

(3) Dr. Lonseth's account records reflecting amounts that he received over the last 2-5 years for other patients who received care and treatment similar to Plaintiffs (Topic Nos. 23-28).

Not only did the defendants fail to comply with the court's briefing order on the subject, but whether Dr. Lonseth engages a factoring company for his account receivables is neither relevant nor proportional to the needs of the case. To the extent, the defendants would continue to seek this information, the subject Motion to Compel is **Denied**.

B. **Request for Contempt Order**

The defendants also seek an order from the Court holding the Office/Administrator and/or Dr. Lonseth in contempt for failing to comply with the notice of deposition and the request for production. The defendants contend that since the office /billing administrator was properly served with the subpoena and 30(b)(6) notice but failed to produce the requested documents or appear at the deposition, they seek and order of contempt. The defendants further seek the costs and fees incurred in traveling to the doctor's office, costs incurred by the court reporter; mileage and for all costs in filing this motion including attorney's fees.

Dr. Lonseth contends that he should not be held in contempt because he did nothing wrong, was not served with either the notice or the request. He further contends that he offered to make himself available on August 19, 2019. He contends that the motion for contempt should be denied.

A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries,* 177 F.3d 380, 383 (5th Cir. 1999) (citing Travelhost, Inc. v. Blandford, 68 F.3d 958, 961 (5th Cir. 1995)). "In a civil contempt proceeding, the party seeking an order of contempt need only establish by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order."Id. at 382-83 (citing *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir.1995); *Martin v. Trinity Industries, Inc.,* 959 F.2d 45, 47 (5th Cir. 1992)). Yet, the Fifth Circuit notes, "[t]he civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court.*"Whitfield, 832 F.2d at 913.* Finally, once a violation is demonstrated, the burden falls on the contemnors to show "either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order." Id. at 914 (citing *Louisiana Educ. Ass'n v. Richland Parish School Bd., 421 F.Supp.*

973, 977 (W.D.La. 1976), aff'd 585 F.2d 518 (5th Cir. 1977); see *United States Steel Corp. v. United Mine Workers of America*, Dist. 20, 598 F.2d 363, 368 (5th Cir. 1979)).

It is undisputed that service was made to a receptionist at Dr. Lonseth's office on June 13, 2019. However, the Lonseth Pain Management Clinic's registered agent for receipt of service of process is Dr. Lonseth, not his receptionist. Despite raising this issue albeit late, Dr. Lonseth is correct that the service of the subpoena is invalid. Consequently, while the subpoena is an order of the court done that on the behest of a lawyer, there was no obligation for Dr. Lonseth to produce the documents or his office billing administrator for deposition. Therefore, the request for a finding of contempt is **DENIED**.

### C. **Protective Order**

Dr. Lonseth also seeks a protective order because the defendants did not obtain consent or approval from either Dr. Lonseth, the individual patients or comply with Louisiana revised Statute 13:3715.1 before issuing the subpoena. Dr. Lonseth contends that he first learned of the surreptitious and improper action after receiving their supplemental memorandum and despite the court's ruling regarding patients in litigation and not in litigation by issuing a subpoena to BCBS and securing payments made to Dr. Lonseth by private insurer.

Dr. Lonseth further contends that the litigation charges contain both professional fees and global fees for facilities, overhead and other expenses. As a result, Dr. Lonseth contends that the comparison is the proverbial "apples and oranges" comparison. Dr. Lonseth contends that three of his patients have engaged counsel to separately demand that the defendants destroy the information obtained. Dr. Lonseth further complains that in addition to the Notice of Deposition, a Fourth Amended Notice was sent to him and contained over 40 topics including subtopics in a different matter pending in this court.

The conduct of the defendants according to Dr. Lonseth amount to harassment, oppression, burden and has resulted in costs to him which he seeks reimbursement for and an award of sanctions against both the defendants and their counsel. He further seeks: (1) an order for reimbursement of expenses; (2) a general order striking any brief filed against him after their receipt of the subpoena return from BCBS; (3) an order requiring destruction of any records they received; (4) a declaration regarding the identity of those who have received copies of the subpoenaed information; (5) and an order prohibiting further harassment and oppression and annoyance by defendants and their counsel. Also included with Dr. Lonseth's motion are letters by an attorney who represents three of Dr. Lonseth's patients who did not give the defendants authorization to secure any of their information.

The defendants oppose the motion stating that no patient identifying information was sought or obtained by them in the subpoena to BCBS and that La. R.S. 13:3715.1 and La. C.C.P. Art. 1469.1 is not applicable to the subpoena sent to BCBS. Rec. doc. 94. The defendants contend that it appears that Dr. Lonseth seeks an order whose effect would be a "get of jail free" card from any further third-party discovery not only in this case but future litigation as well. Id. The defendants contend that there is no reasonable basis to abandon a case-by-case inquiry into whether a protective order is warranted given the specific discovery at issue in each separate case. The defendants provided the computer generated and redacted report it received from BCBS. The defendants therefore contend that the motion for protective order should be denied.

La. R.S. 13:3715.1(B) provides that the "exclusive method by which medical, hospital or other records pertaining to a person's medical treatment, history or condition may be obtained or disclosed by a health care provider, shall be pursuant to an in accordance with the provisions of R.S.40:1299.96. La. R. S. 40:1299.96 provides that "any treatment records include but is not limited to any medical, hospital, laboratory, *invoice or billing statement or other record.* La. R.S.

13:3715.1(K) provides that "any attorney who causes the issuance of subpoena or court order for medical, hospital or other records relating to a person's medical treatment, history or condition and who intentionally fails to provide notice to the patient with the requirements of this Section shall be subject to sanction by the Court.

The BCBS report titled "Weekly Provider Payment Register" contains thirteen columns for various patients, not one patient as contemplated by the statute. The focus is neither on the treatment provided nor the identity of the patients. While some of the columns, if un-redacted would contain patient identifier and claim information, the information that would clearly violate the statute was redacted by BCBS. While there could be a technical violation, the defendants nor their counsel would even know who the patients were in order to comply with the terms of the statute securing approval as the information was not patient specific but instead was service, costs and provider specific.

The identity of the patient is clearly not relevant to the analysis. It is however disturbing that the defendants did not provide notice to Dr. Lonseth that they were seeking this information from a private insurer regarding payments he received for services he render. Additionally, the Court is of the opinion that the decision to subpoena the private carrier for this information is rather far afield of the issues in this case. There is no suggestion that either Reese or Odds are patients with BCBS insurance to which Dr. Lonseth received a payment for services he rendered to them. Further, there is clearly no correlation between the payments made by a private insurer and the factoring company, the entity that the defendants purportedly are interested in. The defendants are cautioned to more carefully consider their wholesale approach to trying to gather information on such an ancillary issue as it could eventually amount to harassment of this non-party medical provider. Nevertheless, the motion for protective order is **DENIED**.

Accordingly,

**IT IS ORDERED** that the Defendants' **Motion for Contempt, Sanctions and Costs and to Compel (Rec. Doc. 68)** is **DENIED**.

**IT IS FURTHER ORDERED** that Non-Party, Dr. Eric Lonseth, M.D., A Professional Medical Corporation's **Emergency Motion for Protective Order (R. Doc. 85)** is **DENIED**

New Orleans, Louisiana, this 7th day of October 2019

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**