IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILBURT REESE AND MARKCO ODDS | * | CIVIL ACTION |
| | * | NO.: 2:18-cv-08336 |
| | * | |
| VERSUS | * | |
| | * | |
| | * | JUDGE: ELDON E. FALLON |
| GREAT WEST CASUALTY COMPANY, | * | |
| MILLER TRANSPORTATION | * | MAGISTRATE: KAREN |
| SERVICES, INC., AND LEROY CALDWELL | * | WELLS ROBY |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANTS' OPPOSITION TO ONE SPINE'S
<u>MOTION FOR PROTECTIVE ORDER</u>**

**NOW INTO COURT,** through undersigned counsel, come **LEROY CALDWELL, MILLER TRANSPORTATION SERVICES, INC. AND GREAT WEST CASUALTY CO.** (collectively, the "<u>Defendants</u>"), who respectfully submit that One Spine's Motion for Protective Order should be denied for the reasons shown in Defendants' Motion to Compel and for Contempt[1] incorporated herein by reference pursuant to Rule 10(c), and the following grounds, to-wit:

**I.    <u>ISSUES IN DISPUTE</u>:**

The fundamental contentions underlying One Spine's Motion for Protective Order[2] are its suggestions that: (a) the discovery is "irrelevant and unimportant in resolving the issues of this case, and not proportionate to the needs of the case," as the collateral source rule applies; (b) portions of the topics and documents sought are protected from disclosure or production by privilege(s); and (c) "Defendants issued One Spine the 30(b)(6) notice and subpoena duces tecum

---

[1] Doc. No. 139, *et seq*.
[2] Doc. No. 143, filed September 25, 2019.

1

in bad faith, as this Honorable Court had already ruled, on July 24, 2019, (Rec.D.75) that defendants were not entitled to any non-litigation patient information."

## II.   SUMMARY OF THE ARGUMENT:

One Spine is wrong on each issue identified above.

First, the evidence and testimony sought by Defendants, including testimony concerning One Spine's relationships with third party funding companies and the contracts underlying the purported transaction between One Spine and such entities, bears directly upon whether the collateral source rule applies under the specific facts of this case – an unresolved dispute.

Second, the "healthcare provider" privilege invoked to severely curtail the 30(b)(6) deposition of One Spine's representative -- circumventing any discussion of One Spine's ties to Medport LA, LLC and any purported sale of medical receivables -- should not be applied to shield testimony and documents underlying a commercial transaction from disclosure. This is especially true given One Spine's alleged counterparty, Medport LA, LLC, has steadfastly attested that "[n]one of Medport's contracts or agreements with medical providers are case and/or patient/plaintiff specific," and "Medport is not a medical provider, nor does it direct any medical care or treatment on any of the accounts it purchases from medical providers, nor does it refer any patients to any medical providers for treatment or care."[3]

Third, the basis for One Spine's suggestion that the subpoenas were issued in bad faith is a ruling that, by its own terms, adjudicated a dispute between Defendants and a party that is not One Spine. One Spine may not simply cherry pick a ruling adjudicating a dispute between Defendants and another third party as a shield to its obligations to provide testimony and documentation associated with disputes that weigh directly upon Defendants' claims and defenses.

---

[3] See Exhibit "1," Declaration of Medport LA, LLC's principal, Kenneth Fust.

2

**III.     LAW AND ARGUMENT:**

   **A. Whether the collateral source rule applies to the transactions between One Spine and third-party funding companies is reasonably disputed.**

One Spine flatly asserts that the collateral source rule applies to its alleged transfer of accounts receivable to a third party (believed to be Medport LA, LLC or Medport Billing, LLC). This legal conclusion is the premise for a blanket refusal to produce the documents underlying the alleged transfer of accounts receivable to a third party. However, Defendants possess reasonable cause to dispute whether the collateral source rule applies under the facts, and the documents underlying the purported sale of medical receivables from One Spine to third parties tend to make it more or less probable that the collateral source rule applies.

Currently, neither Defendants nor the Court possess any independent documentary evidence depicting the parties, timing, and terms of the medical funding agreements. Admittedly, several declarations have been filed by interested parties and non-parties alike attesting to portions of these agreements. Yet, nevertheless, the precise terms and structure of the funding arrangement at issue is unverified, and several declarants are tied to entities with pecuniary or other interests in the outcome of this litigation.

Significantly, a third-party litigation funding company is akin to an investor in a lawsuit. A funding agreement, therefore, is "not in the nature of a traditional collateral source."[4] Under Louisiana law, the key question in determining whether the collateral source rule applies is whether the plaintiff's patrimony has been diminished in some way in order to obtain the collateral source benefits.[5]

---

[4] *Houston v. Publix Supermarkets, Inc.*, 2015 WL 458154 at *2 (N.D. Ga. July 29, 2015); aff'd, *ML Healthcare Services, LLC v. Publix Supermarkets, Inc*. 881 F.3d 1293, 1299 (11th Cir. 2018).

[5] *Bozeman v. State*, 2003-1016 (La. 7/2/04), 879 So. 2d 692, 705.

Information and documents concerning One Spine's contracts and agreements involving third party financing of the medical care rendered in this matter and the terms and obligations associated with those agreements is directly relevant to the question of whether a plaintiff's patrimony was diminished (potentially triggering the collateral source rule). Defendants sought this information from several alternative sources other than One Spine, including the counterparty (funding company) on the other side of One Spine's sale of its accounts receivable. The funding entities have refused to produce this relevant evidence. Accordingly, Defendants have subpoenaed from One Spine the contracts and agreements necessary to determine if the plaintiff's patrimony was diminished and the collateral source rule applies under all terms and conditions of the purported funding arrangement.

Evidence of the contracts and agreements underlying the funding arrangement in this case is also relevant for a second, independent purpose. Specifically, the presence of any third-party litigation funding agreement also implicates the credibility of witness who will be called upon to testify at trial.[6] Specifically, in *Rangel v. Anderson*,[7] the court recognized that evidence of a funding arrangement can be "highly relevant" for impeachment as to credibility and bias of the plaintiff's treating physicians. As this Court is undoubtedly aware, bias is almost always a relevant consideration in weighing credibility. Further, here there is reasonable basis to closely scrutinize the relationship between certain funding entities and One Spine's representative, Dr. Liechty, who was Markco Odds' treating physician.

---

[6] In *ML Healthcare Services, LLC v. Publix Supermarkets, Inc.*, 881 F.3d 1293 (11th Cir. 2018) the Eleventh Circuit upheld admissibility of the third party litigation funding agreement and activities as evidence of potential bias of the treating medical care providers, and their possible desire for additional and continued referrals of patients from the third-party litigation funding company. The Court recognized that for the third-party litigation funding company's business model to flourish, it needs the plaintiffs whom it subsidizes to win their lawsuits. *Id*. at 1302.

[7] 202 F. Supp. 3d 1361 (S.D. Ga. 2016).

4

On October 4, 2018, Mr. Sean Alfortish (identified as SDA in the referenced correspondence)[8] sent an email concerning a discussion with Dr. Liechty related to Markco Odds' medical care. Mr. Alfortish sent this email, with the subject line "Fwd: Marcko Odds," to Brandy Wair (believed to be an underwriter of a funding entity) and Steve Ainbinder (President of Medport Billing, LLC). The body of the email states, as follows:

> Pursuant to your earlier discussion on approval of [Plaintiff] Marcko Odds for surgery, a discussion was had with Dr. Liechty.
>
> He [Dr. Liechty] has agreed to do a discogram on Mr. Odds. That discogram is expected to be performed as early as this afternoon, possibly tomorrow or at the latest, Monday morning prior to Mr. Odds undergoing surgery.
>
> Of course, surgery going forward is dependent upon and contingent upon a positive discogram.
>
> My question is that the report may not be and likely will not be ready for review for Steve prior to the surgery. How would you want me to proceed in the event the discogram is positive but I do not have the report prior to surgery being performed? Should I authorize the surgery contingent upon a positive discogram report even if the physical report is not ready?
>
> Please advise. Thank you.
>
> SDA[9]

Defendants are attempting to obtain testimony and complete disclosures associated with this revealing exchange. Yet, at a minimum, this correspondence strongly indicates that there is some meaningful rapport between One Spine's representatives and the funding entities to whom it allegedly sold accounts receivable.[10] Notably, Medport LA, LLC has declared in this case that Mr.

---

[8] See Exhibit "2," Except of correspondences sent by Mr. Alfortish to One Spine's representatives in an earlier dispute where Mr. Alfortish utilized the same e-mail address.

[9] See Exhibit "3," April 4, 2018 Correspondence from Mr. Alfortish to Steve Ainbinder and Brandy Weir.

[10] This is a supremely reasonable conclusion given existing evidence in this matter, along with communications identified in other earlier disputes. See e.g., Exhibit 2.

Alfortish is an independent contractor for that company.[11]

**B. It is unclear whether third parties were transferred "accounts receivable" from One Spine:**

Mr. Alfortish's exchange related to a dialogue with Mr. Liechty concerning diagnostic testing for plaintiff, Markco Odds, also raises several other questions. Among them are: (a) why is Mr. Alfortish contacting Dr. Liechty directly?; (b) was Markco Odds made aware Mr. Alfortish would be contacting his treating physician?; (c) who authorized Mr. Alfortish to have a "discussion" with Dr. Liechty?; (d) why did Dr. Liechty "agree" to do a diagnostic test (the discogram)?; (e) if a positive discogram is a pre-requisite for surgery, why is the surgery already scheduled before the diagnostic test is conducted?; and finally, (f) why is someone "authorizing surgery" before it is performed?

Defendants are in the process of coordinating discovery to obtain full and complete responses concerning these important questions. However, at this time, Defendants submit that is necessary to verify whether transactions involving One Spine and third-party funding entities involved the sale of accounts receivable or some other transfer.

**C. The "health care" provider privilege should not attach to several items, including any testimony and documents related to transaction(s) between One Spine and third-party funding companies (Medport LA, LLC).**

While it is unclear from One Spine's motion those items and topics it asserts the "health care" provider privilege attaches, in several instances during its abridged Rule 30(b)(6) corporate deposition, One Spine invoked this privilege to sidestep inquiries concerning One Spine's dealings with Medport LA, LLC. Indeed, One Spine foreclosed any questions related to the purchase of Dr.

---

[11] See Exhibit "1," Declaration of Medport LA, LLC's principal, Kenneth Fust.

Liechty's accounts receivable by Medport stating that its basis was: "[t]he Louisiana physician-patient privilege, Revised Statute 13:3734.[12]

There is an undeniable tension between One Spine's invocation of this state law privilege and the declarations of Medport LA, LLC. As noted by One Spine, La.R.S. 13:3734 "[p]rovides a physician-patient privilege for all communications, providing a limited exception for 'when a patient is represented by an attorney and that attorney provides the health care provider with written authorization executed by the patient,' as to 'any communication which was necessary to enable him to diagnose, treat, prescribe, or act for the patient.'"[13] At the same time, Medport LA, LLC, has steadfastly attested that "[n]one of Medport's contracts or agreements with medical providers are case and/or patient/plaintiff specific," and further that, "Medport is not a medical provider, nor does it direct any medical care or treatment on any of the accounts it purchases from medical providers, nor does it refer any patients to any medical providers for treatment or care."[14]

Simply put, if none of Medport's contracts or agreements with Dr. Liechty are patient/plaintiff specific, then it follows that the communications associated with that transaction were certainly not "necessary" to enable Dr. Liechty to enable him to diagnose, treat, prescribe or act for the patient. Likewise, if Medport is not involved in the diagnosis, treatment, or care of the plaintiff, it follows that communications and documentation associated with a commercial transaction (a non-patient/plaintiff specific transfer of accounts receivable) between Dr. Liechty/One Spine and Medport are not subject to the "healthcare provider" privilege. Admittedly, the communication from Medport LA, LLC's independent contractor raises several questions as to the scope of Medport's involvement in the patient treatment process, which may explain the

---

[12] See Doc. No. 139-7, Deposition of One Spine at pp. 21-22.
[13] Doc. No. 143-3 at pp. 3-4.
[14] See Exhibit "1," Declaration of Medport LA, LLC's principal, Kenneth Fust.

7

disconnect between One Spine's invocation of the "healthcare provider" privilege and the facts on the ground.[15]

### D. The Ruling invoked to suggest Defendants issued subpoenas to One Spine in "bad faith" involved the adjudication of subpoenas issued to Dr. Lonseth, not One Spine.

In this Court's July 24, 2019 ruling[16] this Honorable Court outlined a "discovery plan" directed at resolving a dispute between Defendants and Dr. Lonseth, another separate and distinct non-party in this litigation. One Spine was not the subject of or a party to that Ruling. One Spine has no standing to suggest that this Court's July 24, 2019 Ruling can serve as the launchpad for its most serious charge that Defendants subpoenas directed to One Spine were issued in bad faith.

### IV. CONCLUSION:

Based upon the foregoing, One Spine's Motion for Protective Order should be denied, and, for the reasons more fully described in Defendants' Motion to Compel and for Contempt, One Spine should be required to produce the documents sought by Defendants, and to designate a corporate representative to appear at a time, date and location for all parties for a supplemental corporate deposition.

Respectfully submitted,

The Dill Firm, A.P.L.C.

 /s/ David R. Rabalais
JAMES M. DILL (Bar Roll No. 18868)
DAVID R RABALAIS (Bar Roll No. 17759)
825 Lafayette Street
Post Office Box 3324
Lafayette, Louisiana 70502-3324
Telephone: (337) 261-1408

---

[15] See Exhibit "3," April 4, 2018 Correspondence from Mr. Alfortish to Steve Ainbinder and Brandy Weir.

[16] Rec. Doc. 75.

Facsimile: (337) 261-9176
Email: JDill@dillfirm.com
Email: DRabalais@dillfirm.com
ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October, 2019, a copy of the foregoing, "Defendants' Opposition to One Spine's Motion for Protective Order," was electronically filed with the Louisiana Eastern District Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel for all parties to this proceeding by operation of the court's electronic filing system.

_____/s/ David R. Rabalais_____